UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL WALKER,                    :

    Petitioner,                :
                                  PRISONER
V.                                 :  Case No. 3:07-CV-1796 (RNC)

WARDEN, STATE OF CONNECTICUT,      :

    Respondent.                :

RULING AND ORDER

Petitioner, a Connecticut inmate, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 vacating his conviction for murder and other crimes. He contends that the prosecution violated due process by suppressing information favorable to the defense, see Brady v. Maryland, 373 U.S. 83 (1963), and failing to correct false testimony, see Napue v. Illinois, 360 U.S. 264 (1959). Petitioner has filed a motion for summary judgment seeking the relief requested in the petition. For reasons that follow, the motion is denied and the petition is dismissed.

I.  Background

In 1988, following a jury trial in Connecticut Superior Court, petitioner was convicted of murder and sentenced to prison for eighty years. The jury found that on the evening of May 12, 1987, petitioner and his cousin, Tracey Fisher, shot Barrington Solomon and Thomas Dixon, killing Dixon. Solomon and Dixon had been sitting on the first floor rear porch of a dwelling at 104 Enfield Street in Hartford. The prosecution claimed that Fisher

1

and petitioner both fired shots to avenge petitioner's brother, Robert Walker, who had been shot by Solomon.

The key witness against the petitioner was Lehman Brown. Prior to the trial, Brown was in pretrial detention on unrelated robbery charges. Brown's defense counsel attempted to broker a deal with the prosecution whereby Brown would provide information about the Dixon murder in exchange for obtaining release from pretrial detention. Thereafter, Brown signed a statement implicating petitioner in the shooting. That same day, Brown's $10,000 bond was reduced and he was released from custody on his own promise to appear.

Brown gave the following testimony at the trial. He was with the petitioner and Fisher early on the day of the shooting. Later that day he visited a friend, Dion Smith, at her apartment at 98-100 Enfield Street, the building adjoining 104 Enfield Street. After taking a nap, he went to the back porch, from which he saw Fisher and the petitioner enter the back lot behind 98-100 Enfield Street. Fisher, who was carrying an automatic weapon, scaled the fence between the two properties and fired shots at Dixon and Solomon. Petitioner then took the gun from Fisher and fired another series of shots at Dixon and Solomon. Fisher and the petitioner then ran toward Garden Street.

Petitioner attempted to impeach Brown's testimony by suggesting that he testified in exchange for leniency in his

robbery case.  Brown responded that he did not have a deal with
the state.  He also testified that he was not released from
custody on the day he signed the statement implicating petitioner
in the shooting because he was being detained on unrelated
New York charges.

During rebuttal, the prosecutor impeached Brown's testimony
with that of Dion Smith.  Smith testified that, although she had
been with Brown on the day of the shooting, she had never been
with him in or near an apartment at 98-100 Enfield Street.  The
prosecutor explained to the jury that it was his duty to produce
all relevant evidence, whether it helped or hurt the state's
case.  He indicated that Brown "was probably not on the porch at
100 Enfield Street on the night in question," but invited the
jury to credit the other portions of Brown's testimony.

Brown's testimony was otherwise corroborated during the
state's case in chief.  Petitioner's girlfriend, Sandrina
Freeman, told the police that petitioner "used to tell me all the
time that he wouldn't be right unless he got the guy back that
shot his brother."  Appendix P; Transcript at 280.  Solomon
testified that shortly before the shooting he saw petitioner and
Fisher driving toward the back of the residence at 104 Enfield
Street.  He told Dixon, "there goes my enemies."  Shortly
thereafter, he heard shots and "felt a shot in his belly." Id. at
50-52.

Hartford Police Officer John Cunningham testified that he heard two bursts of automatic gunfire, separated by approximately five or six seconds. Id. at 95. Janet Douglas, who lived with Solomon at 104 Enfield Street, also testified that she heard similar noises. Id. at 23. Two sets of shell casings were recovered near the fence that separates 98-100 Enfield Street from 102-104 Enfield Street.

Nadine Collier, who was at her home on Garden Street, testified that she heard two series of shots and saw the petitioner and Fisher, who was holding an automatic weapon, pass by her window shortly after the second burst. Id. at 206-210. Collier later recanted this testimony at a trial on a different habeas petition.

Petitioner's conviction was affirmed on direct appeal. See State v. Walker, 214 Conn. 122 (1990). In 1994, he filed a first petition for habeas corpus alleging ineffective assistance of counsel. The petition was dismissed. In 1996, Brown signed an affidavit recanting his trial testimony. Petitioner subsequently filed a petition for a writ of habeas corpus in Superior Court claiming Brown committed perjury at the trial and the prosecutor knowingly presented the perjured testimony.

In the course of an evidentiary hearing on the petition, it came to light that Brown was released from pretrial detention the same day he signed the statement implicating petitioner in the

shooting. With the habeas court's permission, the petition was amended to allege a violation of Brady based on the state's failure to disclose that it had entered into an agreement with Brown whereby he would be released in exchange for his testimony.

Following the evidentiary hearing, the state habeas court dismissed the petition. The court ruled that there was no Brady violation because the petitioner had failed to prove the existence of an agreement between Brown and the prosecution. The court also rejected the perjury claim, finding Brown's trial testimony truthful in all material respects. Walker v. Warden, No. CV960002314, 2004 WL 3052010 (Conn. Super. Ct. Nov. 24, 2004). The judgment was affirmed on appeal, Walker v. Comm'r of Corr., 103 Conn. App. 485 (2007), and the Supreme Court denied petitioner's request for certification. Walker v. Comm'r of Corr., 284 Conn. 940 (2007). Petitioner then filed this federal petition.

II. Standard of Review

Habeas relief is not available with regard to claims adjudicated on the merits in state court unless: (1) the adjudication of the claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

5

evidence presented in the state court proceeding.  28 U.S.C. §
2254(d).  A state court's factual determinations are presumed to
be correct and may be rebutted only by clear and convincing
evidence.  § 2254(e)(1).

III. <u>Discussion</u>

Under <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), due process
is violated when the prosecution suppresses evidence favorable to
the accused if the evidence is material either to guilt or
punishment.  Evidence that the prosecution entered into an
agreement with a key witness in exchange for testimony is
impeachment evidence favorable to the accused.  <u>Giglio v. United
States</u>, 405 U.S. 150, 154-155 (1972).  Such evidence is material
if it could "reasonably be taken to put the whole case in such a
different light as to undermine confidence in the verdict."
<u>Kyles v. Whitley</u>, 514 U.S. 419, 434-35 (1995).

The petitioner's <u>Brady</u> claim is unavailing because the state
court's finding that no agreement existed between the prosecution
and Brown is supported by the testimony of the prosecutor, which
the court credited.  <u>See</u> <u>Shabazz v. Artuz</u>, 336 F.3d 154, 163 (2d.
Cir. 2003) (credibility determinations are properly within the
province of the state court that presided over the trial).
Petitioner argues that the state court's determination is
unreasonable, citing the following: (1) Brown's attorney entered
into negotiations with the prosecutorial team before Brown signed

a statement and had the impression an agreement had been reached, (2) Brown was released on a promise to appear the same day he signed a statement without posting the $10,000 bond that was initially set, and (3) Brown lied at the trial by insisting he remained in custody under a New York detainer.  These facts do not permit the state court's determination to be rejected as unreasonable in light of the evidence presented at the habeas trial.  See Rice v. Collins, 546 U.S. 333, 342 (2006) (federal courts may not "use a debatable set of inferences to set aside the conclusion reached by the state court.").

Even assuming there was an agreement, it would not have been material under Brady.  Evidence is material when there is a "reasonable probability" its disclosure would have resulted in a different verdict.  Kyles, 514 U.S. at 433.  There was ample evidence, other than Brown's testimony, to support the conviction.  Petitioner had a strong motive to commit the offense.  Other witnesses placed him on the scene before and after the shooting.[1]  Physical evidence confirmed that the weapon was fired from two locations and witnesses testified to hearing two bursts of gunfire.

Brown's testimony that he saw petitioner fire shots was not

_____

[1] Although Nadine Collier recanted her testimony, the state court did not find her recantation credible.  Petitioner has not presented sufficient evidence to disturb the state court's finding.

corroborated by other witnesses.  However, it is unlikely the jury gave significant weight to Brown's testimony.  Evidence that he was biased because of an agreement with the prosecution would have been cumulative to the impeachment evidence introduced at trial.  See Shabazz, 336 F.3d at 166.  Smith testified that Brown was lying about his vantage point on the night of the shooting and the prosecutor admitted Brown had probably lied.  In addition, Brown testified that he was on probation and facing pending charges at the time of the trial.  In light of the substantial corroborating and impeachment evidence introduced at trial, the suppression of the alleged agreement does not undermine confidence in the jury's verdict.

Petitioner presents an alternative construction of his Brady claim, arguing that even if no agreement existed the prosecution should have disclosed that Brown was not being held on a New York detainer when he signed the statement.  Petitioner did not present his claim in this fashion to the state court and thus has not satisfied the exhaustion requirement for federal habeas petitions.  See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). However, this claim can be addressed pursuant to 28 U.S.C. § 2254(b)(2), which permits unexhausted claims to be denied on the merits.  Petitioner's unexhausted Brady claim fails for lack of materiality for the reasons just discussed.

Petitioner's perjury claim is essentially identical to the

alternative construction of his <u>Brady</u> claim: the prosecution knew or should have known Brown was lying when he testified he was held on the New York detainer.  Petitioner did not present this construction of his perjury claim in state court, instead challenging Brown's testimony as a whole.  Nevertheless, because the claim fails, I will address it on the merits.

Due process is violated when the prosecution knowingly presents false testimony if there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." <u>U.S. v. Agurs</u>, 427 U.S. 97, 103 (1976).  Even assuming the prosecution knew Brown lied about the New York detainer, this claim fails for lack of materiality.  Brown's lie obscured an additional piece of evidence that would have called his motives into question.  But disclosure of this lie would have been cumulative to the impeachment evidence that was introduced.  As discussed above, there was substantial independent evidence implicating petitioner in the crime.

IV.  <u>Conclusion</u>

Accordingly, petitioner's motion for summary judgment is denied and the petition is dismissed.

So ordered this 23rd day of September 2011.

/s/ RNC
Robert N. Chatigny
United States District Judge